IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY I. BELL, | ) | CASE NO. 1:09 CV 1880 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| FIRSTENERGY GENERATION | ) | |
| CORPORATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me by consent[1] are cross-motions for summary judgment from defendant FirstEnergy Generation Corporation (FirstEnergy)[2] and *pro se*[3] plaintiff Timothy I. Bell.[4] Bell has responded[5] to FirstEnergy's motion, and FirstEnergy has filed a reply.[6]  Likewise, FirstEnergy has responded[7] to Bell's motion, and Bell has filed a reply.[8]  For the reasons

---

[1] ECF # 8.

[2] ECF # 26.

[3] ECF # 30 at 1.

[4] ECF # 30.

[5] ECF # 31-1.

[6] ECF # 37.

[7] ECF # 33.

[8] ECF # 40.

stated below, Bell's motion for summary judgment is denied, and FirstEnergy's motion for summary judgment is granted.

## Facts

Despite agreement on central facts set forth in the cross-motions for summary judgment, many other facts remain in dispute.  I will note these disputes below.

The facts begin with Bell receiving a speeding ticket on March 6, 2006.[9]  The speeding ticket required Bell to appear in municipal court the morning of March 14.[10]  Bell was scheduled to work that day, so Bell submitted a vacation request form to his supervisor, Dencil Baker.[11]  Bell's request did not disclose that he needed to appear in municipal court.[12]  Absent that information, Baker informed Bell that the request would probably not be approved, because FirstEnergy had a plant "outage" scheduled for March 14, a situation that usually requires all employees to work the shift during the outage.[13]  Baker forwarded the request to Mike Stevenson, Baker's supervisor, who denied the request because of the outage.[14]  Later that day, Baker informed Bell of the denied request.[15]  Bell asserts that he

---

[9] ECF # 26-4.

[10] *Id*.

[11] ECF # 26-5.

[12] *Id*.

[13] ECF # 26-1 at 52.

[14] ECF # 26-5.

[15] ECF # 26 at 4.

then informed Baker that he had to be in court on March 14 and would not be able to work.[16]
FirstEnergy denies this in its answer to the complaint but does not address the issue in its
later filings.[17]  On March 14, Bell appeared in municipal court and did not report to work.[18]

The next day FirstEnergy management conducted a fact finding meeting with Bell and
a union steward.[19]  FirstEnergy asked Bell for proof of his court date, and Bell produced the
traffic citation.[20]  Bell and the union steward representative cited the Collective Bargaining
Agreement section wherein FirstEnergy agrees to permit excused absences with pay for court
appearances.[21]  FirstEnergy alleges that Bell became "loud, argumentative, and disruptive"
during the meeting,[22] but Bell disputes this.[23]

On March 26, FirstEnergy met again with Bell and a union steward to notify him that
he would be suspended for three days for not reporting to work on March 14.[24]  The letter
stated the following reasons for the suspension:

---

[16] ECF # 30 at 5.

[17] ECF # 9 at 7.

[18] ECF # 26 at 4; ECF # 31-1 at 4.

[19] ECF # 26 at 4; ECF # 31-1 at 4.

[20] ECF # 26 at 4; ECF # 31-1 at 4.

[21] ECF # 1-1 at 15.

[22] ECF # 26-6 at 2.

[23] ECF # 31-1 at 5.

[24] ECF # 26 at 4; ECF # 31-1 at 5.

During the [March 15th] investigation, it was determined that you failed to follow the Collective Bargaining Agreement by not providing the Company adequate notice for your requested vacation day in which the Company did not grant the day of vacation.  You were informed to be at work as scheduled by your Supervisor.  However, you chose not to come to work nor did you provide the Company reasonable information or evidence that you could not be at work.  In addition, during the investigation meeting you became loud, argumentative and disruptive.[25]

As already noted, Bell disputes all of the company's determinations in the letter.  The letter was read aloud at the meeting,[26] and the meeting ended with Ron Myers, the plant manager, asking Bell for his badge and informing him that he would be escorted to the locker room and off of the property.[27]

The parties dispute Bell's reaction to the meeting.  Both parties report that Bell "did not take the news of his suspension well."[28]  Bell was escorted to the locker room by Baker and Stevenson, followed by the union steward.  On his way to the locker room Bell took off his hard hat and kicked it,[29] cursing all the way to the locker room.[30]  At the locker room, Bell

---

[25] ECF # 26-6 at 2.

[26] ECF # 26-1 at 29.

[27] ECF # 26 at 5. Bell submits the notes of Dave Rich, the union representative, as Bell's version of the facts, which are reproduced at ECF # 1-1, 17-18.

[28] ECF # 26 at 5; ECF # 31-1 at 5.

[29] ECF # 26-1 at 78.

[30] ECF # 26 at 5; ECF # 1 at 5.

-4-

was "rather loud and definitly [sic] angry.[31]  He "lost his temper"[32] in the locker room.  His

complaint explains: "As I am cleaning out my locker Baker is standing just six feet away

with a smile and a smurk on his face as I turn to see him I call him a 'racist mother fucker'

I say all of you are racist mother f*ckers."[33]  The rest of the encounter is disputed.  Citing the

deposition of Stevenson (supervisor of Baker), who was present, FirstEnergy asserts the

following:

> Plaintiff whirled from his locker and turned toward Mr. Baker.  Plaintiff
> walked right up to him, got 'toe to toe' with him, and pointed his finger in his
> face, "becoming extremely loud and shaking....  Once in his face, Plaintiff told
> Mr. Baker that he was "going to kick his ass" and that "what comes around
> goes around."  Plaintiff turned away and took a step back.  Then, he turned
> towards Mr. Baker again and said, "I'm going to stick my foot so far up your
> ass you racist mother f*cker."[34]

Once again, Bell disputes this account, although he agrees that he was angry and

called Baker a "racist mother f*cker."[35]  Bell stated in his deposition that he does not

remember what else he said to Baker during the encounter,[36] except that he specifically

denies that he told Baker he would "stick his foot up [Baker's] ass,"[37] and specifically denies

---

[31] ECF # 1-1 at 18.

[32] ECF # 26-1 at 89.

[33] ECF # 1 at 5.

[34] ECF # 26 at 10.

[35] ECF # 31-1 at 9; ECF # 26-1 at 78, 80-89.

[36] ECF # 26-1 at 80.

[37] ECF # 26-1 at 80-81.

ever threatening Baker or Stevenson.[38]  At some point both parties agree that the union

steward stepped in to calm Bell down, and Bell grabbed his stuff and left.[39]

The next day, the union filed a grievance over Bell's suspension.[40]  Bell also filed

complaints against FirstEnergy with the Ohio Civil Rights Commission and the Equal

Employment Opportunity Commission.[41]  The union later dropped the grievance.[42]

On April 4, FirstEnergy held a fact-finding meeting about Bell's behavior after the

suspension meeting the week before.[43]  The next week, FirstEnergy terminated Bell's

employment.[44]  The termination letter states the following as the cause of termination:

> On Monday, March 26, 2007 you engaged in inappropriate conduct including
> loud, disruptive and threatening behavior toward a Supervisor while in the
> locker room area....  [I]t is determined that your March 26, 2007 behavior
> violated Company work rules and policies and was not acceptable.  As a result
> of this incident and your overall work record, your employment is terminated
> effective April 10, 2007.[45]

---

[38] ECF # 1 at 5.

[39] ECF # 26 at 6; ECF # 1-1 at 18.

[40] ECF # 1-1 at 34.

[41] ECF # 26-1 at 90.

[42] ECF # 1-1 at 34.

[43] ECF # 26 at 6.

[44] ECF # 26-7.

[45] *Id*.

FirstEnergy asserts that Bell violated the company's non-violence policy.[46]  All employees of FirstEnergy must acknowledge and abide by the policy, and the contents of the policy and Bell's acknowledgment of it are not disputed.[47]

## Course of Proceedings

### A.    Complaint

In his complaint, Bell, an African American and former employee of FirstEnergy, contends that FirstEnergy discriminated against him by wrongfully terminating his employment on the basis of race.[48]  Bell asserts that these actions were in violation of Title VII of the federal Civil Rights Act.[49]

### B.    FirstEnergy's motion for summary judgment

FirstEnergy argues for dismissal on two grounds in its motion for summary judgment. First, FirstEnergy argues that Bell's claim is time-barred because it was not filed within 90 days of receipt of the EEOC's dismissal and notice of rights.[50]  Second, FirstEnergy argues that Bell cannot establish his discrimination claim by either direct or indirect evidence.[51]

---

[46] *Id*.

[47] ECF # 26-2.

[48] ECF # 1 at 1.

[49] *Id.*

[50] ECF # 26 at 8.

[51] *Id*. at 8-13.

**C.**     **Bell's response and cross-motion for summary judgment**

Bell argues in response that his complaint was timely[52] and moves for summary judgment on his discrimination claim on the basis of both direct and indirect evidence.[53]

## Analysis

**A.**     **Timeliness**

FirstEnergy argues that Bell's Title VII case is time-barred.  By law, Bell has 90 days to file a cause of action in federal court from the date of receipt of the EEOC's dismissal and notice of right to sue.[54]  The notice was mailed on May 8, 2009.[55]  Bell, in his deposition, stated that he received the notice on May 8, 2009.[56]  In his reply brief, however, Bell asserts that he did not receive the notice until May 14, 2009.[57]  Bell filed his complaint on August 11, 2009,[58] which is 95 days after May 8, and 89 days after May 14.  Therefore, if Bell received the notice on May 8, then the complaint is time-barred.  If Bell received the notice on May 14, it is not time-barred.

---

[52] ECF # 31-1 at 10.

[53] ECF # 30 at 4.

[54] 42 U.S.C. § 2000e-5(f)(1).

[55] ECF # 26-8.

[56] ECF # 37 at 9-10.  Although FirstEnergy provides the court with part of Bell's deposition, it failed to provide the court with the context of this admission, partially reproduced at *id.*

[57] ECF # 31-1 at 7.

[58] ECF # 1 at 1.

The date on which Bell received the EEOC notice is disputed by the parties, although the dispute is entirely over conflicting testimony from Bell.  Bell's deposition testimony – that he received notice May 8 – is almost certainly incorrect, given the unlikelihood that a notice mailed on May 8 would be received on the same day.  Bell makes the same point in his brief in opposition:  May 8 was the date the notice was mailed, not the date received.[59]  Likewise, there is no evidence of record to support the assertion by Bell, in his brief in opposition, that the notice was not received until May 14.[60]

In such a situation, if the date of receipt cannot be determined, then the Sixth Circuit prescribes a presumptive five-day mailing rule:

> The Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period.[61]

Applying this rule here, I find that Bell received notice on March 13, 2007, and filed his complaint exactly 90 days later, on August 11, 2007.  Thus, Bell's complaint was timely.

---

[59] ECF # 31-1 at 7.

[60] *Id.*

[61] *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 557 (6th Cir. 2000).  This rule is acknowledgedly different than the three day rule stated in Fed R. Civ. P. 6(d) and applied in *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 and n.2 (1984) (*see*, *Hairston v. Armstrong Air Conditioning*, 18 F. App'x 384, 385 (6th Cir. 2001)).

## B.    Retaliation claim

FirstEnergy argues that Bell's retaliation claim is not pled in Bell's complaint.[62]  The Federal Rules of Civil Procedure establish a notice-pleading standard.  All that must be included in the complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief."[63]  The rule is designed to give notice to the other party of plaintiff's claims so that both parties can properly prepare the claim during discovery:  "[The rules] provide for liberal notice pleading at the outset of litigation because [t]he provisions for discovery are so flexible that, by the time a case is ready for summary judgment, the gravamen of the dispute [has been] brought frankly into the open for inspection by the court."[64]  Here, Bell's retaliation claim is simply not pled in his complaint.  It is not even mentioned until Bell's motion for summary judgment,[65] and not argued until Bell's brief in opposition to FirstEnergy's motion for summary judgment.[66]  Thus, Bell's failure to include the retaliation claim in the complaint, and failure to later amend the complaint to include the claim, bars consideration of the retaliation claim on summary judgment.  There is not "fair

---

[62] ECF # 37 at 1 n.1.

[63] Fed. R. Civ. P. 8(a)(2).

[64] *Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009) (citing *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 789 (6th Cir. 2005)) (internal citation omitted).

[65] ECF # 30 at 1.

[66] ECF # 31-1 at 10.

notice,"[67] and Bell's argument in his brief in opposition is "too little too late."[68] "Once a case has progressed to the summary judgment stage ... the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable."[69]

Even if the complaint was construed to give notice of the retaliation claim, Bell never argues the basic elements of a *prima facie* retaliation claim, which requires a showing that (1) a plaintiff must engage in activity protected by Title VII, (2) defendant must have known that plaintiff was exercising protected rights, (3) defendant consequently took an employment action adverse to the plaintiff, and (4) "there is a causal connection between the protected activity and the adverse employment action."[70]  Specifically, neither Bell's complaint nor subsequent filings ever argue any kind of causation between any protected conduct and his dismissal for the locker room incident.[71]

Thus, I further find that Bell failed to plead a retaliation claim in his complaint, and thus this court will not consider the merits of that claim.

---

[67] *Carter*, 561 F.3d at 568.

[68] *Id*.

[69] *Id*. (citing *Tucker*, 407 F.3d at 788).

[70] *Strouss v. Mich. Dept. of Corrs.*, 250 F.3d 336, 342 (6th Cir. 2001).

[71] Bell argues in his brief in opposition that his three-day suspension was issued, and he was subsequently terminated in retaliation against Bell for filing a grievance seeking payment for March 14, 2007 (the day he went to court rather than to work). *See*, ECF # 31-1 at 10. This appears to be the only time Bell frames an issue as retaliation rather than as discrimination, and it does not address the crucial element of causation.

**C.     Summary judgment standards**

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[72]   A fact is "material" only if its resolution will affect the outcome of the lawsuit.[73] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[74]

The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[75]   However, if a party's testimony "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[76]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[77]   Accordingly, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be

---

[72] Fed. R. Civ. P. 56(c).

[73] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[74] *Id*.

[75] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[76] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[77] *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

evidence on which the jury could reasonably find for the plaintiff."[78]  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[79]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[80]  The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury."[81]  "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[82]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[83]  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[84]  The judge's sole function is to determine whether there

---

[78] *Copeland v. Machulis*, 57 F. 3d 476, 478 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 248-49). The opposite, of course, is true of a plaintiff's motion for summary judgment.

[79] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[80] *Celotex Corp.*, 477 U.S. at 324.

[81] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[82] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[83] *Anderson*, 477 U.S. at 248.

[84] *Id*. at 249.

-13-

is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[85]

## D.    Discrimination claim

A discrimination claim may be shown either by direct evidence or indirect evidence.[86] Bell asserts both a direct and an indirect case of § 1981 discrimination.

Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[87]  Here, Bell cites a statement by Myers (plant manager) to one of his managers concerning another employee.  Myers allegedly said "If you can't control your employees [sic] than [sic] give her to me [and] I will fire her."[88]  Putting aside whether the document is admissible, the employee Myers is speaking about is Carol Stenroos, who is not a member of Bell's minority group.[89]  Thus, this statement cannot serve as direct evidence of discrimination.

---

[85] *Id.*

[86] *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

[87] *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

[88] ECF # 30-2 at 1.

[89] As explained by FirstEnergy at ECF # 33 at 4. Bell will later argue that Stenroos is a similarly situated non-minority comparator for the purpose of his disparate treatment case. *See*, *infra*.  Thus, both parties concede that Myers is not speaking about a racial minority here.

A discrimination claim based on indirect evidence is analyzed under the burden shifting approach adopted by the Supreme Court in *McDonnell Douglas Corporation v. Green*.[90]  Under *McDonnell Douglas*, the party bringing the claim must show a *prima facie* case of discrimination. If a *prima facie* case is shown, the defendant must present a non-discriminatory reason for their actions, at which time the burden shifts back to the plaintiff to show that the proffered reason is pretextual.[91]  The party bringing the claim may set forth a *prima facie* case of discrimination under Title VII by either presenting direct evidence of discrimination by the defendant or by introducing circumstantial evidence which creates an inference that discrimination has occurred.[92]

## 1. *Prima facie case by indirect evidence*

To establish a *prima facie* case of discrimination by circumstantial evidence, a plaintiff must comply with the well-known four-part test originally set forth by the Supreme Court in *McDonnell Douglas*.[93]  A plaintiff must show that:

- He or she is a member of a protected class;
- He or she was qualified for his or her job;
- He or she suffered an adverse employment decision; and

---

[90] *DiCarlo*, 358 F.3d at 414 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[91] *Id*. at 414-15.

[92] *Id*. at 414.

[93] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. 792).

- He or she was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.[94]

These elements must be supported by the preponderance of the evidence.[95]  If they are established, it creates a reasonable but rebuttal inference that discrimination has occurred.[96]

The burden of production[97] then "shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action."[98]  If the defendant fails to offer such evidence, a court must find in favor of the plaintiff.[99]  If the defendant does offer such evidence, then the burden shifts back to the plaintiff "to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination."[100]

FirstEnergy's motion for summary judgment asserts that Bell's *prima facie* case of racial discrimination fails in two ways.  First, FirstEnergy asserts that Bell cannot establish that he was qualified for his job because Bell's confrontation with his supervisor Dencil

---

[94] *Id.* (citations omitted).  The Sixth Circuit does not always list these two alternative ways to satisfy element four, but it is apparent from *White* that either way will establish element four of a *prima facie* case.  *See*, *id.*, accord with *Clay v. United Parcel Serv.*, 501 F.3d 695, 703 (6th Cir. 2007).

[95] *Id.* (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[96] *Burdine*, 450 U.S. at 254.

[97] "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *White*, 533 F. 3d at 392 (citing *Burdine*, 450 U.S. at 256).

[98] *Id.*

[99] *Burdine*, 450 U.S. at 254.

[100] *White*, 533 F. 3d at 391-92 (citing *Burdine*, 450 U.S. at 253).

-16-

Baker violated FirstEnergy's anti-violence policy.[101]  Second, FirstEnergy asserts that Bell cannot establish the fourth part of his *prima facie* case "because there are no 'similarly situated' employees treated more favorably."[102]

Here, the first element of the case is not contested; Bell, as an African American, is a member of a protected class under Title VII.[103]

Next, FirstEnergy's argument that Bell was not qualified for his job is actually a stage two argument providing a rationale for FirstEnergy's actions.  For the purposes of the prima facie case, Bell need only be objectively qualified for the job.[104]  Bell has worked for FirstEnergy for over 20 years, which establishes his objective qualifications for the job.[105]

Third, it is not contested in the motions for summary judgment that Bell suffered an adverse employment decision, namely, the termination of his employment with FirstEnergy.[106]

The fourth element of Bell's *prima facie* case cannot be resolved in favor of either motion for summary judgment.  As previously explained, the fourth element may be satisfied

---

[101] ECF # 26 at 10-11.

[102] *Id*. at 11-12.

[103] ECF # 26 at 1.

[104] *Kulik v. Med. Imaging Resources, Inc.*, 325 F. App'x 413 (6th Cir. 2009) (holding that the employer's non-discriminatory reasons for discharge could not be used as grounds for finding the employee not qualified for her position under step one of the *McDonnell Douglas* framework).

[105] ECF # 30-1 at 1-2 (showing Bell was employed by FirstEnergy as early as 1985).

[106] ECF # 26-7.

either by showing that Bell was replaced by a person outside of the protected class or by showing that Bell was treated differently than similarly situated non-protected employees. FirstEnergy here argues that Bell has not shown that similarly situated employees were treated more favorably than Bell.[107]  Bell asserts otherwise[108] and in his reply brief also argues that he was "replaced by a non minority (Dave Zetlaw)."[109]

Neither argument is dispositive on these motions.  Even if FirstEnergy is correct, Bell can still establish a *prima facie* case by showing that he was replaced by a non-protected employee.  However, Bell failed to assert this alternative argument until his reply brief and never presents any evidence in support of the claim, so FirstEnergy has had no opportunity to dispute the claim.   This issue forces me to deny Bell's motion for summary judgment because there is a genuine issue of material fact as to Bell's replacement and, as determined below, there is no evidence of any similarly situated, better-treated employees.  For purposes of FirstEnergy's motion for summary judgment, I will continue with the *McDonnell Douglas* framework, assuming *arguendo* that Bell can establish a *prima facie* case.

**2.     FirstEnergy's justification of Bell's termination**

Assuming that Bell can establish a *prima facie* discrimination case, can FirstEnergy offer evidence of a "legitimate, non-discriminatory reason" for the adverse employment

---

[107] ECF # 26 at 11-12.

[108] ECF # 31-1 at 7-8.

[109] ECF # 40 at 3.

action?[110]  This is the proper place for FirstEnergy to assert that Bell violated FirstEnergy's

non-violence policy.  The policy states: "Any acts or threats of violence will not be tolerated.

Further, anyone engaging in hostile or violent behavior will be subject to discipline, up to

and including discharge...."[111]  "Violent behavior" is defined, in relevant part, as follows:

- Physically harming or threatening an individual, group of individuals, or relatives of those individuals.
- The possession of weapons of any kind on Company property or the brandishing of any object that could reasonably be perceived as a weapon.
- Loud, angry, or disruptive behavior.
- Callous or intentional disregard for the physical safety or well being of others.
- Intentional destruction of Company or employee property.
- Committing a felony or misdemeanor on Company property.
- Any other conduct that a reasonable person would perceive as constituting a threat of violence.
- The unauthorized possession of any deadly weapon, dangerous ordnance [sic] or substance on Company property, at Company functions, in Company vehicles, in personal vehicles used on Company business, or on an employee while conducting Company business.[112]

FirstEnergy asserts that Bell's violation of this policy on March 26, 2007 was the reason for

his termination and that Bell's violation of the policy is a legitimate, non-discriminatory

reason for the termination of Bell's employment with FirstEnergy.[113]  Even when the facts

are viewed in the light most favorable to Bell, Bell's confrontation with Baker constitutes a

---

[110] *DiCarlo*, 358 F.3d at 414 (citing *Burdine*, 450 U.S. at 254).

[111] ECF # 26-2 at 9.

[112] *Id.*

[113] ECF # 26 at 12.

-19-

facial violation of this policy, as it was "loud, angry, and disruptive behavior" and so, on the face of the policy, could result in discharge.  Thus, it constitutes a legitimate, non-discriminatory reason for termination of employment absent a showing of pretext.

**3.** **Pretext**

The burden to show that this justification is only pretext lies with Bell.  Pretext can be shown either directly by affirmatively showing discriminatory decisionmaking, or indirectly, by "showing that the employer's proffered explanation is unworthy of credence."[114]  The proffered explanation is shown to be unworthy of credence by showing that the proffered reason:

- Has no basis in fact,
- Was not the actual reason, or
- Is insufficient to explain the employer's action.[115]

The third category is often shown by reference to differential treatment received by similarly situated employees.[116]  Evidence that challenges the reasonableness of the employer's decision is also helpful insofar as it casts doubt on the employer's explanation.[117]  At the

---

[114] *White*, 533 F.3d at 392-93 (quoting *Burdine*, 450 U.S. at 256).

[115] *Id*. at 393 (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)).

[116] *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009)) ("The third showing ... ordinarily[] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.").

[117] *Id*. (citing *Wexler*, 317 F.3d at 578).

-20-

summary judgment stage, the question is whether Bell has "produced enough evidence for a reasonable jury to infer"[118] that FirstEnergy's explanation is merely pretext for discrimination.

Bell's argument here has three basic points:

- Similarly situated non-minority employees of FirstEnergy received better treatment than he.[119]
- His discharge was disproportionate to the alleged employment agreement violation, and thus casts doubt on FirstEnergy's proffered explanation.[120]
- There is direct evidence of pretext – that is, that the non-violence policy was not the actual reason for his discharge – in Myers statement threatening to terminate the employment of Carol Stenroos.[121]

a.    *Similarly situated employees*

A comparable employee must be similar in all of the *relevant* aspects to be considered as evidence of pretext.[122]  Relevance is dependant on the specific facts of each case.[123]  In cases of allegedly discriminatory work discipline, the Sixth Circuit usually analyzes three aspects:[124]

---

[118] *White*, 533 F.3d at 394.

[119] ECF # 31-1 at 7-8.

[120] ECF # 31-1 at 6-7.

[121] ECF # 31-1 at 8.

[122] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Pierce v Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

[123] *McMillan v. Castro*, 405 F.3d 405, 413-14 (6th Cir. 2005).

[124] *Id.*

-21-

- • Did the comparator have the same supervisor, or at least the same "ultimate decisionmaker?",[125]
- • Was the comparator subject to the same standards?,[126] and
- • Was the comparator "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it?"[127]

Bell offers the employment records of seven non-minority employees of FirstEnergy as similarly situated comparators:  Gene Harwood, Patricia Brown, Carol Stenroos, Robert Kingston, Dave Tobias, Dale Colantino, and Stan Williams.

Many of these, however, do not share the same ultimate decisionmaker as Bell, even if the term is defined broadly to include Myers, Stevenson, or Baker.  Brown apparently worked at a different FirstEnergy plant, and there is nothing in the record indicating that she shared any common supervisors with Bell.[128]  Williams was in Ashtabula with Bell, but the record does not indicate that he shared any common supervisors with Bell.[129]  Kingston apparently did not work in Ashtabula and did not share any common supervisors with Bell.[130]

---

[125] *See*, *id.* at 414; *Ercegovich*, 154 F.3d at 352.

[126] *Ercegovich*, 154 F.3d at 352.

[127] *Id.*

[128] ECF # 40-1 at 4-6.

[129] ECF # 30-4 at 6-12.

[130] ECF # 30-4 at 1-5.  Kingston's record also indicates that he did not engage in the same conduct as Bell.  *Id.*

Finally, the records on Tobias date back to 1993, and he apparently did not share any common supervisors with Bell either.[131]

Several others were not disciplined for the same conduct as Bell. This claim is about Bell's termination for violating the non-violence policy, not about Bell's suspension for allegedly missing a day of work without approval. Thus, Harwood[132] and Colantino,[133] whose files focus on disciplinary actions taken for tardiness, are not relevant comparators.

This leaves only the file of Carol Stenroos. Stenroos was disciplined in 2005 for violation of the same non-violence policy while working at the Ashtabula plant while Myers was plant manager. In a confrontation with David Butler (safety and training coordinator) and John Kreptowski (plant maintenance manager)[134] about her compliance with safety rules, she reportedly became upset and loudly called Butler a "f*cking jerk and a snake."[135]  A witness testified that he was concerned that Stenroos' might start "a physical altercation" and

---

[131] ECF # 30-3, 1-11.

[132] ECF # 40-1 at 1-3.  Harwood also had a verbal confrontation with a co-worker. However, arguing with a co-worker is easily distinguished with confronting a supervisor. *Id.*

[133] ECF # 40-1, at 7-8.

[134] ECF # 30-2 at 12.

[135] ECF # 30-2 at 22.  Stenroos filed a sex discrimination complaint following the altercation and her suspension.  All information concerning the altercation comes from that the arbitrator's report, reproduced in part at *id.* at 17-33.  There was disagreement over Stenroos' specific choice of epithets – the quotation reflects Stenroos's version. *See*, *id.* at 22-23.

so intervened and escorted her out of the area.[136]  Stenroos was on record for previously using "inappropriate language" toward management.[137]  She was suspended three days for violation of the non-violence policy.[138]

While Myers had been involved in the decisionmaking process on a different matter concerning Stenroos,[139] there is no evidence on the record that he was involved in the decisionmaking process relating to Stenroos' confrontation with Butler.  On the contrary, Myers' deposition states that he was not involved.[140]  There is no evidence on the record that any other member of FirstEnergy management was involved both in the disciplinary suspension of Stenroos and in the termination of Bell's employment.  Bell and Stenroos, therefore, were not similarly situated employees.

The record does not indicate that any similarly situated employees of FirstEnergy received preferential treatment when compared to Bell.

b.    *The reasonableness of FirstEnergy's decision*

Second, Bell challenges the reasonableness of FirstEnergy's decision to terminate his employment.  As noted above, evidence that challenges the reasonableness of the employer's decision serves to cast doubt on the employer's proffered explanation.  Comparing the range

---

[136] *Id*. at 24-26.

[137] *Id*. at 32.

[138] *Id*. at 28-29.

[139] *Id*. at 1-10.

[140] ECF # 34 at ¶ 13 (Declaration of Ron Myers).

of "violent conduct" (which includes physically assaulting another employee, brandishing a weapon, intentional destruction of property, commission of a felony, etc.) with possible disciplinary measures, Bell's conduct under either version of the facts constituted a minor infraction of the non-violence policy but received the maximum penalty under the policy. Discharge may seem like a disproportionate response to one, unprecedented instance of "loud, angry, or disruptive behavior" or even in response to a threat of violence (under FirstEnergy's version of the facts).

Even considering disputed facts in the light most favorable to Bell, FirstEnergy's decision to terminate Bell's employment is not so unreasonable as to establish pretext. Bell did in fact violate the non-violence policy, there is no evidence in the record that this was not actually the reason for Bell's termination, and FirstEnergy's proffered reason for discharge is sufficient to explain their actions.

Bell had the burden under Civil Rule 56 to produce sufficient evidence from which a jury could reasonably reject FirstEnergy's explanation for the termination.[141] The mere fact that conduct worse than Bell's could qualify as violent conduct under the policy that Bell violated does not meet that burden. While Bell may believe that his conduct was not sufficiently violent to warrant termination, his subjective belief alone fails to establish discrimination.[142] Furthermore, even if I assume that FirstEnergy's decision to fire Bell, rather than impose a lesser penalty, was not a "perfect decision," or constituted "unwise

---

[141] *Schoonmaker v. Spartan Graphic Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010).

[142] *Id.* at 269.

-25-

business judgment," absent evidence of discrimination, there exists no triable fact as to pretext.[143]

c.     *Myers' statement concerning Stenroos*

Finally, Bell asserts that Myers' alleged statement threatening to discharge Stenroos – "If you can't control your employees [sic] than [sic] give her to me [and] I will fire her"[144] – constitutes evidence that FirstEnergy's proffered reason was not the actual reason for Bell's termination.[145]   A reasonable mind could not conclude that the statement made concerning a different, non-African American employee constitutes evidence of racial discrimination toward Bell.

## Conclusion

For the foregoing reasons, Bell's motion for summary judgment is denied, and FirstEnergy's motion for summary judgment is granted.

IT IS SO ORDERED.

Dated:   August 30, 2011                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[143] *Id.* at 269-70.

[144] ECF # 30-2 at 1.

[145] ECF # 31-1 at 11.